# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**EVA ROMAN,**

       **Plaintiff,**

**v.**                                                    **Case No: 6:18-cv-1710-Orl-31TBS**

**LOANDEPOT.COM, LLC,**

       **Defendant.**

## ORDER

This matter comes before the Court without a hearing on the Motion to Dismiss (Doc. 44) filed by the Defendant, loanDepot.com (henceforth, "loanDepot"), the response in opposition (Doc. 48) filed by the Plaintiff, Eva Roman ("Roman"), and the reply (Doc. 51) filed by loanDepot.

**I. Background**

According to the allegations of the First Amended Complaint (Doc. 38) in this putative class action, which are accepted in pertinent part as true for purposes of this motion, loanDepot holds the mortgage on Roman's home in Kissimmee. In September 2017, shortly after Hurricane Irma struck the area, loanDepot offered Roman, via email, a "forbearance plan". (Doc. 38-1 at 3). The email described the "forbearance plan" as "a temporary suspension of your mortgage loan payments intended to allow time and flexibility for you to manage the challenges affecting your ability to pay your mortgage due to the natural disaster." (Doc. 38-1 at 3). According to the email, much of which was written in a question-and-answer format, if Roman accepted, her mortgage payments would be "suspended for a minimum of 3 months," "negative credit reporting will be suppressed" and "late charges will be waived for the duration of the plan." (Doc. 38-1 at

3). In response to the question "When will I need to repay payments under this forbearance?", the email provided the following answer:

> Your current loan requirements remain in effect; however, you are not required to make any payments during the term of the forbearance plan. The amounts otherwise due have been suspended during this time. The payments that were temporarily suspended during the forbearance plan period are not being forgiven, eventually they must be paid through an approved re-payment plan or another available loss mitigation workout option.

(Doc. 38-1 at 4). The email also provided that "negative credit reporting will be suppressed and late charges will be waived for the duration of the plan." (Doc. 38-1 at 3).

Roman accepted the forbearance plan offer on September 20, 2017. (Doc. 38 at 2). On or about September 23, 2017, she spoke with a loanDepot representative by telephone and asked how she would need to pay the suspended payments. (Doc. 38 at 5). During this conversation (henceforth, the "September 23 Conversation"), the loanDepot representative "assured Plaintiff that her suspended payments would be added to the end of the mortgage."[1] (Doc. 38 at 5-6).

On or about September 25, 2017, Roman received a confirmation letter from loanDepot. It stated that the forbearance plan "will begin on 10/1/2017 through 12/1/2017. During this time you will not be required to make payment." (Doc. 38-2 at 2). The letter also provided that

> The forbearance plan will end 1/1/2018 at which time you will be contacted to reassess your current circumstances as well as be provided information on alternatives that may be available to you.
> …
>
> Please note that your current loan requirements remain in effect; however, you are not required to make any payment during the term of the forbearance plan. The amounts otherwise due have been suspended during this time. . . .

---

[1] In Count I of the Amended Complaint, Roman says she was also told this by loanDepot on January 16, 2018. (Doc. 38 at 12). She does not provide any other details about this conversation.

- 2 -

> CREDIT REPORTING: Please note that we will not be reporting the delinquency status or the entry into a Forbearance Plan to credit reporting agencies.

(Doc. 38-2 at 2).

Roman did not make the mortgage payments that would otherwise have been due on October 1, November 1, and December 1 of 2017 (henceforth, collectively, the "Suspended Payments"). On or around October 17, 2017 Roman received a loan statement from loanDepot showing that she had not made her October 1 payment and now owed $3,313.84 – twice the amount of her usual payment. (Doc. 38 at 6). On or around November 10, 2017, she received a letter from loanDepot stating that she had missed two payments and was now in default. (Doc. 38 at 6-7). In the letter, loanDepot stated that

> If we do not receive these payments by 12/03/2017 legal action may be instituted, which could result in your losing your home.

(Doc. 38 at 6-7). About a week later, Roman received another loan statement, which showed that she had not made the October 1 and November 1 payments and now owed $4,970.76. (Doc. 38 at 7).

Shortly thereafter loanDepot informed Roman that she had to either pay the Suspended Payments immediately or enter into a loan modification that would raise her mortgage interest rate from 3.75 percent to 4.25 percent. (Doc. 38 at 7). She refused both options and instead asked loanDepot to add the extra payments to the end of the loan, as she had been promised during the September 23 Conversation. (Doc. 38 at 7). loanDepot refused to do so.

In late December, loanDepot offered to place Roman into a "foreclosure prevention program," pursuant to which she would need to make a mortgage payment of $1,573.69 each month for three consecutive months to avoid foreclosure. (Doc. 38 at 7). Roman accepted and made the first two payments in January and February of 2018. (Doc. 38 at 7). However,

loanDepot refused to accept the third payment unless she agreed to a loan modification that included a higher interest rate. (Doc. 38 at 7). Roman refused to modify the loan. (Doc. 38 at 7).

By letter dated March 9, 2018, loanDepot told Roman she had to pay $3,149.02 by March 6, 2018 and approximately $2,156 for each of the following five months thereafter to avoid foreclosure. (Doc. 38 at 8). She refused. In September 2018, loanDepot initiated foreclosure proceedings against her. (Doc. 38 at 8).

On October 11, 2018, Roman filed the instant suit. In her Amended Complaint, she asserts three claims: violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-501.213 (Count I); breach of contract (Count II); and promissory estoppel (Count III). By way of the instant motion, loanDepot seeks dismissal of all three counts.

### II.     Legal Standards

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir.1984). In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988). The Court must also limit its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. at 1949 (internal citations and quotations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the plaintiff is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

**III.     Analysis**

A.     Count I – FDUTPA

A claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach County, Inc.*, 169 So. 3d 164, 167 (Fla. 4th DCA 2015). "In the context of FDUTPA, 'actual damages' are defined as the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 180 (Fla. 3d DCA 2010) (citations omitted).

Accordingly, for purposes of an FDUTPA claim, the term "actual damages" does not include special or consequential damages. *Id.*

At the outset, what would appear to be the most obvious assertion of a deceptive act or unfair practice in the Amended Complaint is Roman's allegation that she was (falsely) told during the September 23 Conversation that, rather than making up the Suspended Payments at the end of the suspension period (*i.e.*, in January 2018), she would be allowed to tack the Suspended Payments on to the end of her mortgage loan. (Doc. 38 at 5-6). However, Roman contends that her claims are all based solely on written agreements (Doc. 48 at 6), and the September 23 Conversation was never reduced to writing.[2]

In any event, as loanDepot points out in its motion, any effort to base any of Roman's claims on such a conversation would be barred by Florida's Banking Statute of Frauds, Fla. Stat. § 687.0304. That statute provides in pertinent part that "[a] debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." Fla. Stat. § 687.0304(2).[3] The statute defines "credit agreement" to include an agreement to forbear repayment of money. Fla. Stat. § 687.0304(1)(a).[4]

---

[2] Roman also does not contend that the second conversation in which a loanDepot representative told Roman this, which allegedly occurred on January 16, 2018 (Doc. 38 at 12), was ever reduced to writing.

[3] In her response, Roman points out that none of the Banking Statute of Frauds case law cited by loanDepot in its motion involved situations where a conversation was relied on to clarify ambiguous terms from a written agreement. (Doc. 48 at 8-9). The implication is that Roman wishes to rely on the September 23 Conversation for this purpose. However, she does not even make a perfunctory argument that she should be allowed to do so here. Moreover, the relevant language from the forbearance agreement – *i.e*, the language that she will have to make up the Suspended Payments "through an approved re-payment plan or another available loss mitigation workout option" (Doc. 38-1 at 4) – was open-ended but not ambiguous.

[4] The Banking Statute of Frauds is not limited to claims for breach of contract. *See, e.g.*,

In her response, Roman states that the "deceptive act or unfair practice" at issue here is loanDepot's "misleading offer to place the mortgages of Plaintiff and members of the putative class into forbearance without disclosing that the Defendant intended to require immediate repayment once the period ended or a loan modification that would increase the applicable interest rate." (Doc. 48 at 16). But deferring payment(s) until the conclusion of the suspension period is the very essence of a forbearance agreement; there is nothing deceptive or unfair about such a requirement, and, without more, a borrower such as Roman cannot reasonably claim to have been victimized by it. And Roman has not alleged anything that, if proven, would establish that she was deceived or treated unfairly in regard to this requirement. The emails spelling out the terms of the forbearance agreement made this repayment obligation clear, telling her, *inter alia*, that "[t]he amounts otherwise due have been suspended **during this time**" (Doc. 38-1 at 4) (emphasis added) and that "[t]he forbearance plan will end 1/1/2018" (Doc. 38-2 at 2). Roman cannot point to any language in the email or the letter she received that could have deceived her into believing that the Suspended Payments were being deferred, not just until the beginning of 2018, but well beyond that, perhaps even until the end of her mortgage loan.

Moreover, loanDepot was not obligated to offer Roman a repayment plan that was more favorable than one requiring repayment as soon as the forbearance period ended. Roman seeks to rely on the following language from the initial email offering the forbearance plan:

> The payments that were temporarily suspended during the forbearance plan period are not being forgiven, eventually they must be paid **through an approved re-payment plan or another available loss mitigation workout option.**

---

*Dixon v. Countrywide Financial Corp.*, 664 F.Supp.2d 1304, 1308 (S.D.Fla. 2009) (FDUTPA claim) and *Bloch v. Wells Fargo Home Mortg.*, 755 F.3d 886, 889-90 (11th Cir. 2014) (promissory estoppel claim).

(Doc. 38-1 at 4) (emphasis added).  This language leaves open the possibility that Roman could work out any number of deals with loanDepot including one, for example, under which she would make payments over a longer period while maintaining the same interest rate on her mortgage. But it does not require loanDepot to agree to any such deal.  Thus, it was not deceptive or unfair for loanDepot to fail to disclose that it would not offer such a repayment plan.

Roman also complains, in passing, that loanDepot's promise to suspend payments during the forbearance period was deceptive because she received two statements and one letter during that time showing that she had "missed" the first two of the Suspended Payments.  (Doc. 48 at 17).  However, despite what those documents showed, she does not allege that loanDepot penalized her for deferring those payments.  For example, she does not allege that loanDepot imposed late fees based on her "failure" to make those payments when they were originally due, that loanDepot notified credit reporting agencies about the "missed" payments, or that loanDepot initiated the foreclosure proceedings because she did not make those payments by their original deadlines.  So far as Roman's allegations disclose, the payments were actually suspended during the forbearance period, even if a few of the documents she received did not reflect this.  But assuming *arguendo* that those payments were not actually suspended (and that loanDepot's promise to do was therefore a deceptive act), Roman has not stated an FDUTPA claim because she has not shown that she suffered any damage as a result.

Count I will therefore be dismissed.

### B. Count II – breach of contract

To state a claim for breach of contract under Florida law, a plaintiff must allege (1) the existence of a valid contract; (2) a material breach of that contract; and (3) damages resulting from the breach. *See, e.g., Friedman v. N.Y. Life Ins. Co.*, 985 So.2d 56, 58 (Fla. 4th DCA 2008).

Roman's allegations underlying her breach of contract claim are essentially identical to the allegations underlying her FDUTPA claim, and lead to the same result.

In Count II, Roman asserts that loanDepot committed a breach when it "refused to place the payments supposedly suspended by the forbearance agreement at the end of her loan." (Doc. 38 at 14). But as discussed *supra*, Florida's Banking Statute of Frauds bars any claim based on the conversations wherein Roman was allegedly told she would be allowed to delay making the Suspended Payments until the end of her mortgage loan, because those conversations were not reduced to writing, signed by both parties, and so on. Fla. Stat. § 687.0304(2).

Roman also contends that loanDepot breached the forbearance agreement by failing to actually suspend her obligation to make the payments at issue here. (Doc. 38 at 13). Again, as discussed above, even if loanDepot failed to suspend that obligation, Roman has not shown that she suffered any damages as a result. Roman also asserts, as a breach, that loanDepot failed to honor its "obligation and promise under the forbearance agreement to allow the payments that were supposed to be suspended as a result of the forbearance to be paid through an approved repayment plan or another loss mitigation obligation." (Doc. 38 at 14). But the language upon which Roman seeks to rely does not impose an obligation on loanDepot to offer her any particular type of repayment plan. And even assuming *arguendo* that loanDepot was obligated to offer some option other than immediate repayment, Roman admits in the Amended Complaint that the company offered to let her pay the Suspended Payments over time after the suspension period, rather than immediately thereafter, in exchange for an increase in her interest rate. (Doc. 38 at 7). While she may not have approved it, it was nonetheless a repayment plan.

Count II will be dismissed.

### C. Count III – Promissory Estoppel

As described by the Florida Supreme Court, the doctrine of promissory estoppel provides as follows:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*W.R. Grace and Co. v. Geodata Services, Inc.*, 547 So. 2d 919, 924 (Fla. 1989) (citing *Restatement (Second) of Contracts* § 90 (1979)).

In connection with this claim, Roman again argues that loanDepot breached its promise to offer her a repayment plan – an argument that is foreclosed by, *inter alia*, her allegations in the Amended Complaint that she was offered the chance to make payments over time in exchange for an interest rate increase. As this is the only promise Roman seeks to have enforced via promissory estoppel, Count III will be dismissed.

### IV. Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss (Doc. 44) filed by the Defendant, loanDepot.com, is **GRANTED**, and the Amended Complaint (Doc. 38) is **DISMISSED WITHOUT PREJUDICE**. Should the Plaintiff wish to do so, she may file a second amended complaint that cures the issues discussed above on or before July 12, 2019.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 28, 2019.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE